Filed 9/30/13  In re Te. S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Te.S., et al., Persons Coming Under the Juvenile Court Law. | B245690 |
| | (Los Angeles County Super. Ct. No. CK92644) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| K.S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Timothy R. Saito, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Melinda A. Green, Senior Associate County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Te.S. (a nine year old) and To.S. (a seven year old) were adjudicated dependents of the juvenile court.  On appeal, K.S. (mother) contends the juvenile court's conclusion the children were at risk of harm while in her care and custody because of her substance abuse and mental illness is not supported by substantial evidence, and that the court abused its discretion in issuing the dispositional orders.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The children came to the attention of the Department of Children and Family Services on March 17, 2012, based on a report and emergency referral from the Greater El Monte Community Hospital.  At approximately 8:00 that morning, mother arrived at the hospital emergency room asking to be examined for a possible ectopic pregnancy (mother apparently had had one or more ectopic pregnancies in the past).  On examination, it was determined the pregnancy was normal.  Emergency room staff described mother as erratic, antsy, agitated and "talking 100 miles an hour."  Mother frequently went outside to smoke cigarettes, despite her belief she was pregnant.  Hospital staff suspected mother to be under the influence of a controlled substance.  Mother tested positive for amphetamines, methamphetamines, and marijuana.  Mother reportedly "bolted out of the back door" before the doctor had a chance to talk to her.

Officer Abbott of the El Monte Police Department reported to mother's home to speak with her at approximately 3:30 p.m. that same day.  According to him, mother, at that time, did not appear to be under the influence of a controlled substance but did appear "a little off."  Officer Abbott interviewed the children who reported no abuse or neglect.

In the evening, Department social worker, Silva Badalian, responding to the emergency referral, made an unannounced visit to mother's home.  Mother resided with her husband[1], and her mother-in-law, D.H., and father-in-law.  Both Te.S. and To.S. were also at the home.  Badalian reported mother initially opened the door and said something

---

[1]  Mother's husband is not the father of the children.

incomprehensible due to extremely slurred speech. Mother shut the door and refused to answer it again, until after Badalian was forced to ring the doorbell for some five minutes. Badalian was then allowed into the home to speak with mother and D.H. Mother's speech was slurred, but very rapid. She was "fidgeting and irritable." Throughout the interview, mother's thoughts were scattered and she often went off on "tangents." Mother had to be repeatedly redirected to answer the questions. Badalian observed that mother had superficial burns on her thumb and index finger, and multiple sores on her face, two of which appeared to have been recently "picked at."

Mother provided the social worker with a medical marijuana card valid through February 14, 2013, and stated she took medical marijuana as well as medication for bipolar disorder (Olanzapine and Lithium Carbonate). She otherwise denied using illegal drugs, but said she used an illicit drug approximately a week earlier when she ran out of her prescribed bipolar medication and volunteered that people with mental health disorders often "self-medicate." Mother also acknowledged she previously had been arrested for drug-related charges and previously had entered a court-ordered drug program.

With mother's permission, Badalian spoke with both Te.S and To.S. Both children said mother smoked cigarettes outside the home. Neither had knowledge of any other drugs, and when drugs and drug paraphernalia were described to them, both denied ever seeing such things. The children denied any abuse.

The Department spoke with A.S. (father), who lived with his sister and her minor son. The Department determined mother and father had never been married, and at the time of the referral, they had not lived together for approximately seven years. Pursuant to a family court order, mother and father shared joint legal custody, with primary physical custody resting with father. Father reported mother had come to the family law court "high" during the proceedings to establish the custody arrangement. He further said mother had a long history of using "Crystal Meth" and that he believes she is still using because of the way she looks, talks rapidly and because she "gets violent." However,

3

father denied ever personally witnessing mother use or possess methamphetamine, marijuana, or any illegal drugs or drug paraphernalia. Father's sister also denied seeing mother use drugs.

Te.S. and To.S. were taken into temporary protective custody on March 17, 2012, because they were with mother pursuant to the regular visitation schedule and not scheduled to return home to father until March 18. The children were transported to father's home. The Department filed a petition pursuant to Welfare and Institutions Code section 300.[2]

The petition, as later sustained, alleged that mother "has a history of substance abuse and is a current abuser of amphetamine, methamphetamine and marijuana, which renders the mother incapable of providing the children with regular care and supervision. On 3/17/12 and on prior occasions, the mother was under the influence of illicit drugs while the children were in mother's care and supervision. The mother had a positive toxicology screen for amphetamine, methamphetamine and marijuana on 3/17/12. The mother's abuse of illicit drugs endangers the children's physical health and safety, creates a detrimental home environment and places the children at risk of physical harm and damage. [¶] . . . [Mother] suffers from mental and emotional problems including bi-polar disorder, which renders the mother incapable of providing the children with regular care and supervision. The mother failed to take the mother's psychotropic medication as prescribed. The mother's mental and emotional problems endanger the children's physical health and safety and place the children at risk of physical harm and damage."[3]

At the initial detention hearing, the children were ordered released to father, who was determined to be nonoffending and was cooperating with the Department. Mother

---

[2] All further undesignated section references are to the Welfare and Institutions Code.

[3] The court sustained the allegations at paragraph b1 and b2 of the petition. All allegations against father were stricken. Father is not a party to this appeal.

4

was granted monitored visitation with the children. The matter was continued for adjudication due to mother's absence and her report she had a medical emergency and could not get to court.

Father sought a restraining order against mother, contending mother had come to his home intoxicated, pushed him and his sister, used foul language, smoked in front of the children, and also made various threats, including that she was going to "shoot an overdose of heroin in [father's] neck." Father also worried mother would take and hide the children because she had not changed her license plates to California plates (her car apparently had Minnesota plates) despite having lived in California for over nine years. The court granted the restraining order.

The Department later confirmed that mother pled guilty to being under the influence of a controlled substance in November 2006. The Department also confirmed mother suffered from "Bipolar 1 Disorder" and had been under the care of a psychiatrist since August 2011. The psychiatrist had recommended mother attend group therapy, but after attending a few sessions mother stopped going. The Department was told mother's primary contact with the psychiatrist is to obtain refills on her prescription medications and to adjust dosages as necessary, and that no statement could be provided as to whether or not mother presented a danger to the children.

Mother failed to report to scheduled drug testing on May 2, 2012, May 15, 2012, June 13, 2012, June 21, 2012, July 3, 2012, July 16, 2012, August 17, 2012, and August 23, 2012.

The jurisdictional hearing was held October 5, 2012. Mother's mother-in-law, D.H., testified she had lived with her son and daughter-in-law (mother) since 2007. D.H. testified mother was very loving with the children. Before the commencement of these proceedings, mother and the children spent the first, third, and fifth weekends together each month as well as two days during the week. D.H. never observed mother use illicit drugs and never observed mother to appear to be under the influence. D.H.

5

acknowledged she had no professional training in diagnosing mental health disorders or evaluating drug addiction.

The court did not allow mother's husband to testify, finding his testimony would be cumulative to D.H.'s.

Mother testified she went to the hospital on March 17, 2012, for an intrauterine ultrasound because she tested positive on a home pregnancy test and had a history of ectopic pregnancies. She admitted she smoked marijuana but said she did not use methamphetamine or amphetamine. Mother acknowledged she suffered from bipolar disorder and had been prescribed medication for that condition. Mother consulted with her doctor and then stopped taking the medication when she thought she was pregnant. She was off the medication for eight or nine days, and during that time felt depressed. In addition, when mother went on a recent vacation, she stayed two days longer than she had anticipated and had to break her medication in half. Mother admitted she had been arrested in 2006 for being under the influence of drugs. With respect to the care of the children, mother testified, that when they were with her, she fed the children, made sure they had what they needed, put them to bed, washed their clothes, helped them with their school work, and visited the children's school.

Hector Alvarez, a Department social worker, testified consistently with the Department's reports that mother had tested positive for amphetamine, methamphetamine and marijuana when she visited the hospital on March 17, 2012. Alvarez testified that a criminal background check revealed mother had been arrested on several drug-related charges. Alvarez testified mother was receiving treatment from a psychiatrist for bipolar disorder. Alvarez confirmed mother saw the psychiatrist for medication management and that, although group therapy had been recommended, mother had gone on only two occasions. Alvarez said he could not state whether mother's behavior, which was the basis for the Department's concern about her ability to care for her sons, was caused by her diagnosed mental disorder, her substance abuse, or a combination of both.

6

Social worker Badalian testified she spoke with, and attempted to interview, mother on March 17, 2012. She said she was with mother for approximately five hours. Baladian testified consistently with her reports, explaining that during the visit mother's speech was slurred, but rapid, and she was difficult to understand. Mother went off on "tangents" and could not stay focused. She was also very irritable. Mother had sores on her face that appeared to be recently "picked at," as well as superficial burn marks on her fingers. When Badalian asked mother about the sores and burns, mother reacted angrily. Mother also disclosed she was bipolar and told Badalian that persons with mental illness sometimes self-medicate. Badalian testified that the children's responses to her questions appeared to indicate that neither child had seen drugs or was familiar with them. Badalian confirmed that she had received training on the types of behaviors associated with substance abuse, and the specific signs and issues related to personal appearance that may indicate an individual has a problem with illegal drugs.

George Thorimbert, the medical director for the laboratory at Greater El Monte Community Hospital testified he was responsible for reviewing the results of mother's drug test taken March 17, 2012. The positive test results for amphetamine, methamphetamine and marijuana were valid and accurate. The reference in the report to "unconfirmed" only meant there was no secondary confirmation, but it was nonetheless a valid result for medical purposes. The lab uses quality control procedures and if those protocols had not been followed, the report would not have issued.

At the conclusion of the testimony, the juvenile court sustained the petition and proceeded to disposition. The court found both Badalian's testimony, and mother's March 17, 2012 positive test result, were credible. The court found father's statements and that of the nurse, who described mother's behavior as erratic, further supported the conclusion that mother used illicit substances. The court expressed concern over whether mother took her medication for bipolar disorder. The court found by clear and convincing evidence that returning the children to mother's custody posed a substantial danger to the children's physical and emotional health. The court ordered mother to

7

undergo a program of drug and alcohol services, random drug tests, a psychiatric evaluation, individual counseling to address case issues, and a parenting class.

This appeal followed.

## DISCUSSION

### 1. The Jurisdiction Order

Mother contends there is no substantial evidence supporting the court's jurisdiction, specifically that there is no evidence that mother's substance abuse or bipolar disorder placed the children at a substantial risk of harm within the meaning of the statute. We disagree.

" 'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' [Citation.] ' "If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed . . . ." ' [Citation.]" (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 820; accord, *In re James R.* (2009) 176 Cal.App.4th 129, 134-135 [Under the substantial evidence test "[w]e do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding."].)

Section 300, subdivision (b) allows the juvenile court to take jurisdiction when a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness . . . by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

8

The Department alleged pursuant to section 300, subdivision (b), and the court found, that mother's substance abuse and mental and emotional problems placed the children at substantial risk of physical harm and damage. It cannot reasonably be disputed mother suffered from substance abuse and bipolar disorder. Although mother denies her substance abuse, her repeated failure to test supports the inference that her tests would have been positive if she had appeared for the scheduled tests. Mother's pattern of evading testing along with the positive test results, and previous drug-related charges, show mother has a substance abuse problem. Additionally, father, a nurse, and a social worker all observed mother under the effects of a substance that drastically affected her demeanor and interfered with her communication skills, focus, and mood. She was irritable and prone to angry, rambling outbursts. Mother physically threatened father, and father reported that she was prone to violent outbursts. Mother also had burn marks on her thumb and index finger. The record overwhelmingly supports the finding mother suffered from substance abuse.

Jurisdiction under section 300, subdivision (b) is properly based on a finding that a parent's substance *abuse*, as opposed to mere use, places a minor child at substantial risk of future harm based on the parent's "compromised ability" to care for and supervise the child. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284; see also *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453 [father's use of medical marijuana negatively impacted his demeanor, causing hostile behavior and poor judgment, and potentially exacerbated panic attacks].)[4]

In *In re R.R.*, the court rejected the father's challenge to the jurisdictional finding based on his substance abuse, explaining the juvenile court reasonably could have concluded the father's repeated abuse of methamphetamine, which had recently led to his hospitalization, and his pattern of lying to the social worker about his addiction, raised an

---

[4] Cf. *In re David M.* (2005) 134 Cal.App.4th 822, 829-830 (isolated incidents of marijuana use and remote, speculative risk of harm insufficient to support jurisdiction).

inference the father had a compromised ability to parent his child "thus justifying the assumption of jurisdiction." (*In re R.R.*, *supra*, 187 Cal.App.4th at p. 1284.)

Similarly here, mother's long-term abuse of methamphetamines, her regular use of marijuana, her convictions for drug-related offenses, her irritable, angry demeanor, positive drug test results and pattern of evading additional testing, more than adequately support the court's assumption of jurisdiction over Te.S. and To.S. The focus of dependency proceedings is on the protection of minor children. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) The juvenile court need not wait for a child to actually suffer serious harm to assert jurisdiction. Where circumstances show a substantial, nonspeculative risk of future harm because of a parent's compromised ability to act as a parent as a result of long-term substance abuse, as here, the court is justified in asserting jurisdiction.

### 2. The Disposition Orders

Mother also contends there was no evidence supporting the order removing Te.S. and To.S. from her custody and that the disposition orders constitute an abuse of discretion.

The evidence recited above regarding mother's substance abuse problem and its deleterious effect on her demeanor and judgment substantially supports the court's order removing the children from mother's custody. (*In re R.V.* (2012) 208 Cal.App.4th 837, 849 ["The jurisdictional findings are prima facie evidence the child cannot safely remain in the home. . . . The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate."].)

"At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child. 'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion.' [Citation.]" (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 454; accord, *In re R.R.*, *supra*, 187 Cal.App.4th at p. 1284.)

10

Given the evidence in the record, mother has failed to establish the court's dispositional orders amounted to " 'an arbitrary, capricious, or patently absurd determination.' [Citation.]" (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 454.)

## DISPOSITION

The jurisdiction and disposition orders are affirmed.


                                                        GRIMES, J.


I concur:


        RUBIN, Acting P. J.


11

**Flier, J., Dissenting**

I respectfully dissent. It is now well established that jurisdiction under Welfare and Institutions Code section 300, subdivision (b), the only applicable statute, requires proof of three elements: "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) 'The third element "effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that *past* physical harm will *reoccur*). [Citations.]"''" (*In re J.O.* (2009) 178 Cal.App.4th 139, 152, italics added.) "Section 300, 'subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness." [Citation.]'" (*In re David M.* (2005) 134 Cal.App.4th 822, 829.) More recently, *In re John M.* (2013) 217 Cal.App.4th 410, 418, has reaffirmed that a substantial risk of serious physical harm or illness must be demonstrated to support jurisdiction under section 300, subdivision (b).

Thus, mother's substance abuse must be "tied to actual harm" to the children or "serious risk of harm." (*In re David M., supra*, 134 Cal.App.4th at p. 830.) Such harm is not presumed. (*Ibid*.) There is no dispute that mother never harmed the children. The question here therefore is whether there was evidence tying mother's substance abuse to risk of serious harm. This is not a case like *In re Lana S.*, in which mother left within her children's reach glass pipes, burnt foil, a burnt tablespoon and a blowtorch. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 100.) Nor it a case like *In re Rocco M., supra*, 1 Cal.App.4th at pages 820, 825, in which an often absent mother exposed her son to drug use and provided him access to her illegal drugs. This case is distinguishable from *In re R.R.* (2010) 187 Cal.App.4th 1264,1284, where a "whereabouts unknown" father, who

had little contact with his daughter and a compromised ability to care for his daughter, challenged jurisdiction. Here, for over a decade, mother has consistently cared for her children, provided for them, and she never exposed them to drugs or drug paraphernalia. Under these circumstances, there was no evidence linking mother's substance abuse to a serious risk of harm and jurisdiction was not warranted. (*In re W. O.* (1979) 88 Cal.App.3d 906, 909 [trial court's speculation that parents' drug use might harm children insufficient to support jurisdiction].)

The record also contains no evidence tying mother's bipolar disorder to risk of serious harm. The Los Angeles County Department of Children and Family Services (DCFS) fails to identify any harm that occurred as a result of mother's mental issue or that is likely to occur as a result of it. Mother had been under the care of a psychiatrist prior to the dependency proceedings, and she sought out such care on her own initiative. Mother missed medication when she was pregnant and when she extended a vacation, both limited, isolated incidents. No evidence shows that mother's bipolar disorder places her children -- now ages 9 and 11 -- at risk of harm. Evidence of a mental illness without evidence of abuse or neglect of the children does not support jurisdiction. (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) DCFS "had the 'burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent.'" (*Ibid*.) Because DCFS failed to carry its burden, jurisdiction on this ground was unwarranted. (*In re R.M.* (2009) 175 Cal.App.4th 986, 990 [jurisdiction improper when mother's depression did not affect her ability to parent her children].)

In short, the record contains no evidence mother ever posed a risk of harm to her children. Moreover, there was no evidence the children were afraid of mother or wished to live only with father. Because I find no evidence supporting jurisdiction, I would also reverse the juvenile court's dispositional order. (*In re James R., supra*, 176 Cal.App.4th at p. 137.)


FLIER, J.


2